## The Benjamin F. Hunt, Jr.

*(District Court, D. Massachusetts. April 17, 1888.)*

COLLISION—DAMAGES—TOWAGE.

    Where a vessel, in a collision caused by the fault of another, lost her jib-boom, bowsprit, head-gear, and rigging, and all her head-sails except the fore-stay sail, had her forward bulwarks stove, and her head carried away, *held*, that the expense of a tug to tow her through dangerous navigation to her home port was a proper item of damage recoverable against the vessel causing the injury, and the action of the master in taking her to the home port, instead of going into an intermediate port for temporary repairs, would be respected, unless he acted dishonestly or ignorantly.

At Law.   Exception to allowance of item of damages.
*C. T. Russell*, for libelant.
*Frederick Dodge*, for claimant.

NELSON, J.   At the former hearing of this case the bark Benjamin F. Hunt, Jr., was found in fault for a collision with the three-masted schooner Anna A. Booth, on the 30th of August, 1886, off Chatham. The case was afterwards referred to an assessor, who has made his report, and has included as part of the damages the amount of a bill of $200 paid by the libelant to the Boston Tow-Boat Company for the services of the tug Storm King in towing the schooner from the place of collision to New York. The claimant of the bark excepts to the allowance of this item, upon the ground that the expense of the tug was unnecessarily incurred. The schooner at the time was bound on a voyage from St. John to New York, which latter port was also her home port. In the collision she lost her jib-boom and bowsprit, and all her head-gear and rigging. Of her head-sails only her fore stay-sail remained. Her forward bulwarks were also stove, and her head carried away. Under these circumstances, the schooner was justified in proceeding to New York, which was both her home port and her port of discharge, for her permanent repairs. In her disabled condition she was clearly not bound to attempt the difficult and dangerous navigation of Nantucket shoals and Vineyard sound without assistance. She had, indeed, the alternative of going into some intermediate port for temporary repairs, and then proceeding on her way. But this would in all probability have increased, rather than diminished, the damages recoverable against the bark. The expense of such repairs and the demurrage, might, and probably would, have exceeded the cost of the service of the tug. Besides, the master was uncertain as to the condition of the hull, and in good faith came to the conclusion that the prudent course for him to pursue was to take the tug. His decision ought not to be overruled except upon proof that he acted dishonestly or ignorantly. Exception is overruled.